IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

CHARLES JOHN BYRNE,

        Plaintiff,      Case No. 3:09 CV 919

 -vs-

                 MEMORANDUM OPINION

CSX TRANSPORTATION, INC., et al.,

        Defendant.

KATZ, J.

   This matter is before the Court on Defendants' motion for summary judgment (Doc. 61). Plaintiffs have filed a response (Doc. 82), to which Defendants have filed a reply (Doc. 84). The motion will be granted in part and denied in part, as set forth below.

**I. Factual Background**

   On May 19, 2008, plaintiff Charles Byrne was driving his 1997 Toyota Corolla westbound on Ulsh Road in Claridon Township in Marion County, Ohio, when he approached a railroad crossing beyond the intersection of Ulsh Road and Marion-Galion Road. His son, plaintiff Cody Byrne, was a passenger in the car. As Byrne's car entered the crossing, it was struck in the passenger side by a train operated by defendant CSX Transporation, Inc. The CSX train was operated by defendants Gerald Horn, the engineer, and Alphonse Ducre, III, the conductor. As a result of the crash, the 1997 Corolla was knocked from the crossing and overturned, injuring both passengers.

   The present suit was filed on March 9, 2009 in the Common Pleas Court of Marion County. It was removed here on April 22, 2009 on the basis of diversity of citizenship. Charles and Cody Byrne bring a claim against CSX for common-law negligence, asserting that CSX failed to give warning of the train's approach that complied with the applicable federal and state

audibility requirements, failed to exercise reasonable care in its operation of the train, failed to warn its crew and members of the public of the hazardous nature of the grade crossing in this case, and failed to properly maintain that grade crossing. Charles and Cody Byrne also have a claim against defendants Horn and Ducre for common-law negligence. Joann Byrne, Charles's wife, brings a claim for loss of consortium, and Plaintiffs bring a claim for punitive damages based on the alleged willful and wanton misconduct of Defendants.

**II. Summary Judgment Standard**

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the initial responsibility of "informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The movant may meet this burden by demonstrating the absence of evidence supporting one or more essential elements of the non-movant's claim. *Id*. at 323-25. Once the movant meets this burden, the opposing party "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (quoting Fed. R. Civ. P. 56(e)).

Once the burden of production has so shifted, the party opposing summary judgment cannot rest on its pleadings or merely reassert its previous allegations. It is not sufficient "simply [to] show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus.*

*Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rather, Rule 56(e) "requires the nonmoving party to go beyond the pleadings" and present some type of evidentiary material in support of its position. *Celotex*, 477 U.S. at 324; see also *Harris v. General Motors Corp.*, 201 F.3d 800, 802 (6th Cir. 2000). Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

"In considering a motion for summary judgment, the Court must view the facts and draw all reasonable inferences therefrom in a light most favorable to the nonmoving party." *Williams v. Belknap*, 154 F. Supp. 2d 1069, 1071 (E.D. Mich. 2001) (citing *60 Ivy Street Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir. 1987)). However, "'at the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter,'" *Wiley v. U.S.*, 20 F.3d 222, 227 (6th Cir. 1994) (quoting *Anderson*, 477 U.S. at 249); therefore, "[t]he Court is not required or permitted . . . to judge the evidence or make findings of fact." *Williams*, 154 F. Supp. 2d at 1071. The purpose of summary judgment "is not to resolve factual issues, but to determine if there are genuine issues of fact to be tried." *Abercrombie & Fitch Stores, Inc. v. Am. Eagle Outfitters, Inc.*, 130 F. Supp. 2d 928, 930 (S.D. Ohio 1999). Ultimately, this Court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52; see also *Atchley v. RK Co.*, 224 F.3d 537, 539 (6th Cir. 2000).

**III. Discussion**

Defendants move for summary judgment on several grounds. They argue that Plaintiffs' claims relating to inadequate warning devices at the site of the crossing are preempted by federal

law, and that they are not responsible for allegedly obstructive vegetation near the crossing. They also argue that there is insufficient evidence that the train horn was sounded in an improper manner, and that the train crew failed to maintain a proper lookout, to survive summary judgment. Finally, they contend that the alleged negligence of Charles Byrne was the sole proximate cause of the collision.

For the reasons that follow, the Court will grant summary judgment in favor of Defendants on Plaintiffs' claims that Defendants failed to install adequate warning devices at the site of the crossing, failed to remove obstructive vegetation near the site of the crossing, failed to maintain a proper lookout, and are liable for punitive damages. The Court will deny summary judgment on the issues of inadequate horn signaling and Charles Byrne's comparative negligence.

## A. *Preemption Under the Federal Railroad Safety Act*

Plaintiffs contend that CSX failed in its duty to install adequate warning devices at the site of the crossing. Defendants contend that, because it is undisputed that federal funds were used to install warning devices at the site of the crossing, Plaintiffs claims relating to the adequacy of the warning devices at the site of the crossing are preempted by federal law. The Court agrees.

The Federal Railroad Safety Act ("FRSA") was enacted, in part, to "maintain a coordinated effort to develop and carry out solutions to the railroad grade crossing problem." 49 U.S.C. § 20134(a). The FRSA grants the United States Secretary of Transportation the power to "prescribe regulations and issue orders for every area of railroad safety," 49 U.S.C. § 20103, and provides that all "[l]aws, regulations, and orders related to railroad safety . . . shall be nationally uniform to the extent practicable." 49 U.S.C. § 20106. The law also provides, however, that "[a] State may adopt or continue in force a law, regulation, or order related to railroad safety . . . until

the Secretary of Transportation . . . prescribes a regulation or issues an order covering the subject matter of the State requirement." *Id*. Further, "[a] State may adopt or continue in force an additional or more stringent law, regulation, or order related to railroad safety . . . when the law, regulation, or order (A) is necessary to eliminate or reduce an essentially local safety or security hazard; (B) is not incompatible with a law, regulation, or order of the United States Government; and (C) does not unreasonably burden interstate commerce." *Id*.

Where federal funds have participated in the installation of warning devices at a crossing, state-law tort claims concerning the railroad's failure to maintain adequate warning devices at that crossing are preempted under the FRSA. *Norfolk S. Ry. Co. v. Shanklin*, 529 U.S. 344 (2000) (interpreting 23 C.F.R. §§ 646.214(b)(3) & (4)). There is no dispute that federal funds participated in the installation of the warning devices at issue in this case.

Plaintiffs contend, however, that their claims as to the adequacy of the warning devices fall within the exception for "an essentially local safety hazard." Such "essentially local safety hazards" are those which are "not capable of being adequately encompassed within uniform national standards." *Norfolk & W. Ry. Co. v. Pub. Util. Comm. of Ohio*, 926 F.2d 567, 571 (6th Cir. 1991) (citing H.R.Rep. No. 1194, 91st Cong., 2d Sess., reprinted in 1970 U.S.Code Cong. & Admin.News 4104, 4117).

Plaintiffs contend that the Ulsh Road crossing here at issue is an "essentially local safety hazard" because of 1) the "skewed angle" of the crossing, which makes it "difficult or impossible" for approaching motorists to see approaching trains from behind them; 2) alleged vegetative sight obstructions at or near the crossing; 3) the steep grade of the crossing, which also "detracted from the ability of the motorist" to scan for trains; 4) and the placement of the whistle post relative to

the crossing. But the case law indicates that none of these factors, alone or in combination, made the Ulsh Road crossing a "peculiarly local hazard" for purposes of the FRSA See *Shanklin v. Norfolk S. Ry. Co.*, 369 F.3d 978, 987 (6th Cir. 2004) ("[A] visual encumbrance, be it overgrown vegetation, a structure, or the contour of the land, triggers the regulatory mandate for certain warning devices [under the FRSA], and accordingly preempts common law claims regarding the adequacy of warning signals"); *Union Pac. R.R. Co. v. Cal. Pub. Util. Comm'n*, 346 F.3d 851, 861 (9th Cir. 2003) ("[T]here is nothing 'fundamentally' local about the steep grade/curve combination"); *Wooten v. CSX R.R.*, 164 Ohio App.3d 428, 436 (2005) ("[T]he existence of obstructive vegetation is not a condition which cannot be 'adequately encompassed within uniform, national standards.'"); *O'Bannon v. Union Pac. R.R. Co.*, 960 F.Supp. 1411, 1421 (W.D. Mo. 1997) ("[L]ack of active warning devices at the crossing, the steep grade and angle of the crossing, and the proximity of the crossing to a highway" did not create 'local safety hazard' for purposes of 49 U.S.C. § 20106).

Therefore, the Court grants summary judgment in favor of Defendants on Plaintiffs' state-law claims relating to the adequacy of the warning devices at the Ulsh Road crossing. Because Plaintiffs' punitive damages claim is premised on the failure of CSX to install adequate warning devices at the Ulsh Road crossing, see Doc. 82 [Plaintiffs' Br. in Opp.] at 12 ("CSX could have remedied the problem long before Mr. Byrne's crash by installing lights, lights and gates or closing the crossing. CSX's failure to do so . . .entitles plaintiffs to punitive damages"), that claim must be dismissed as well.

***B. Obstructive Vegetation***

In their Second Amended Complaint, Plaintiffs contend that CSX was negligent in failing to remove obstructive vegetation from near the Ulsh Road crossing. While this claim is not preempted under the FRSA, as the claims for inadequate warning devices at the grade crossing are, see *Wooten*, 164 Ohio App. at 437, Plaintiffs have failed to present sufficient evidence on this claim to survive summary judgment. "To raise a dispute of material fact concerning [a railroad]'s negligence in letting [obstructive vegetation[ grow, plaintiff must offer affirmative evidence that the allegedly obstructive vegetation was growing on [the railroad]'s right-of-way." *Gallaga v. Grand Trunk Western R.R.*, 1999 WL 681559 at *2 (N.D. Ohio Aug. 4, 1999); see also *Wooten*, 164 Ohio App. at 441 ("CSX had no duty to remove visual obstructions outside of its right-of-way."). Because Plaintiffs have not offered any evidence that the allegedly obstructive vegetation in this case was growing on CSX's right-of-way, summary judgment must be granted in favor of Defendants on this claim.

## *C. Inadequate Train Horn Signaling*

Plaintiffs contend that the train crew did not sound the horn in compliance with 49 C.F.R. § 222.21. That regulation requires that the locomotive horn begin to be sounded in a sequence of two long blasts, one short blast, and one long blast beginning between 15 to 20 seconds before the locomotive enters the crossing. In this case, it is agreed that the locomotive's horn began sounding when the train was about 17.7 seconds from the crossing. According to the analysis of Plaintiffs' experts, the first blast lasted 1.1 seconds, the second lasted 2 seconds, the third lasted 1.1 seconds, and the fourth lasted 3.8 seconds. This was not a long-long-short-long pattern, as required by the regulation: the first, "long" blast lasted the same amount of time as the third, "short" blast. Plaintiffs' expert testimony indicates that the first blast should have been

7

significantly longer. Plaintiffs have thus produced evidence indicating that the train crew failed to blow the horn in the proper sequence, which constitutes negligence *per se*.

Defendants contend, however, that the train crew's failure to blow the horn in the proper sequence was not the proximate cause of the collision. The case Defendants primarily rely on for their argument, *Petre v. Norfolk S. Ry. Co.*, 458 F.Supp.2d 518 (N.D. Ohio 2006), is distinguishable. The *Petre* Court found that the railroad's failure to blow its whistle promptly was not the proximate cause of the collision in that case, reasoning that "[i]t is illogical to conclude that the 3-second delay in sounding the whistle prejudiced Mrs. Petre's ability to hear the whistle (when it would have been much further from the crossing), since she did not appear to hear the whistle when the train was upon her." 458 F.Supp.2d at 534. This reasoning was based on the *Petre* Court's finding that Mrs. Petre "disregarded the sounding whistle." *Id*. at 535.

In this case, by contrast, there is some evidence that Charles Byrne was listening for a train horn. Cody Byrne has testified that his father slowed the vehicle as he approached the tracks, and Charles Byrne, though generally testifying that he cannot remember the events surrounding the collision due to his injuries, has testified that it was his habit to listen for train horns and, if he heard anything that sounded like a train horn, to slow his vehicle. There is thus a genuine issue of material fact as to whether the failure to blow the train horn in the proper sequence, and the failure to sound a longer initial blast, proximately caused the collision here.

### D. *Failure to Maintain a Proper Lookout*

Plaintiffs contend that the train crew was negligent in failing to maintain a proper lookout. The evidence indicates that both Horn, the engineer, and Ducre, the conductor, saw Byrne's car approaching but assumed that the car would follow Marion-Galion Road at the fork in the road

8

near the train crossing, and not continue straight on Ulsh Road, into the path of the train. As stated by Horn, "[T]he turnoff is right there. At the time you realize he's coming that way, he's pretty well already there." (Horn Depo. at 73-74). As stated by Ducre, "I remember seeing the car briefly, and I know there's another road off to the side. He could have taken that one. He could have easily taken that one, but obviously he didn't." (Ducre Depo. at 135-136).

Under Ohio law, "[i]t is not negligent for the engineer and brakeman for a railroad locomotive to assume that an automobile approaching the tracks will yield to the oncoming train." *Cates v. Consol. Rail Corp.*, 100 Ohio App.3d 288, 301 (1995). In this case, the evidence indicates that the train crew did not have sufficient time to take effective emergency precautions after realizing that Charles Byrne's car was not going to yield to the oncoming train. Cf. *Petre v. Norfolk Southern Corp.*, 260 Fed.Appx. 756, 762 (6th Cir. Dec. 14, 2007). Therefore, the Court grants summary judgment in favor of Defendants on Plaintiffs' claim that the train crew was negligent for failing to keep a proper lookout.

### *E. Comparative Negligence*

Defendants contend that the evidence in the record establishes that Charles Byrne's negligence was the sole proximate cause of the collision. Under Ohio law, "[i]ssues of comparative negligence are for the jury to resolve unless the evidence is so compelling that reasonable minds can reach but one conclusion." *Simmers v. Bentley Constr. Co.*, 64 Ohio St.3d 642, 646 (1992); see also *Leizerman v. Kanous*, 181 Ohio App.3d 579 (2009) ("Issues of proximate cause and comparative negligence are ordinarily for the trier of fact to determine.").

In this case, the evidence that Charles Byrne's negligence was the sole proximate cause of the accident is not clear enough to warrant an entry of summary judgment in the Defendants'

favor. As noted above, there is evidence in the record from which a jury could find that the collision in this case could have been averted had the train sounded the proper horn sequence.

**IV. Conclusion**

For the foregoing reasons, Defendants' motion for summary judgment (Doc. 61) is granted in part and denied in part. The motion is granted as to Plaintiffs' claims that Defendants failed to install adequate warning devices at the site of the crossing, failed to remove obstructive vegetation near the site of the crossing, failed to maintain a proper lookout, and are liable for punitive damages. The motion is denied as to the issues of inadequate horn signaling and Charles Byrne's comparative negligence.

IT IS SO ORDERED.

      s/ *David A. Katz*
      DAVID A. KATZ
      U. S. DISTRICT JUDGE