IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

CHARLES JOHN BYRNE,

                Plaintiff,          Case No. 3:09 CV 919

-vs-

                                    MEMORANDUM OPINION

CSX TRANSPORTATION, INC., et al.,

                Defendant.

KATZ, J.

    Plaintiffs Charles Byrne and Cody Byrne filed this negligence action against Defendants CSX Transportation, Inc. ("CSX"), Gerald Horn, and Alphonse Ducre, III, after a CSX train operated by Horn, the engineer, and Ducre, the conductor, collided with Plaintiffs' car. The matter proceeded to trial on the issues of Defendants' allegedly negligent use of the train horn, and on car driver Charles Byrne's contributory negligence. At the end of Plaintiffs' case, Defendants moved for judgment as a matter of law. For the reasons stated herein, Defendants' motion is granted.

**I. Background**

    On May 19, 2008, at approximately 11:15 a.m. on a clear day, Plaintiffs Charles Byrne and Cody Byrne were traveling westbound in a 1997 Toyota Corolla on Ulsh Road near Caledonia, Ohio. Charles Byrne was driving, and Charles' son, Cody, was the only passenger. At the same time, a train owned by Defendant CSX and operated by Defendant engineer Gerald Horn and Defendant conductor Alphonse Ducre, III, was traveling southwest at approximately 48 miles per hour, and was proceeding toward a point where the tracks intersected Ulsh Road at a public highway grade crossing.

The crossing was equipped with Standard Improved Crossbuck signs and a painted stop bar on the road. Additionally, an advance warning disc and railroad crossing pavement markings were located approximately 783 feet before the crossing. Moreover, Plaintiffs were both familiar with the crossing and had seen trains traversing it in the past. Indeed, Charles Byrne often traveled over the crossing once or more every week.

On the day of the accident, Plaintiffs approached the crossing at approximately 25 miles per hour. Instead of stopping prior to the crossing, however, or turning left onto a road that parallels the tracks, Plaintiffs continued straight ahead into the crossing without stopping the vehicle. Consequently, Plaintiffs' vehicle was struck by the train on the passenger rear side, was knocked from the crossing, and overturned. Charles Byrne sustained serious injuries and was life-flighted to a Columbus, Ohio hospital. Cody Byrne sustained minor injuries.

Plaintiffs sued CSX, Horn, and Ducre in the Marion County Court of Common Pleas on March 9, 2009. Charles Byrne's health insurer, Aetna, was added as an involuntary plaintiff as to its rights of subrogation. The case was removed to this Court and the matter proceeded to trial on the issues of Defendants' allegedly negligent use of the train horn, and Charles Byrne's contributory negligence.[1] Defendants moved for judgment as a matter of law at the end of Plaintiffs' case.

## II. Judgement as a Matter of Law

Under FED. R. CIV. P. 50(a), a trial judge must grant a motion for judgment as a matter of law if "there can be but one reasonable conclusion as to the verdict. If reasonable minds could differ as

---

[1] This Court previously granted Defendants' motion for summary judgment on Plaintiffs' claims that Defendants failed to install adequate warning deices at the crossing, failed to remove obstructive vegitation near the crossing, and failed to maintain a proper lookout. (Doc. 86). The Court also granted summary judgment in favor of Defendants on Plaintiffs' claim for punitive damages. *Id*.

to the import of the evidence, however, a verdict should not be directed." *Anderson v. Liberty Lobby*, Inc., 477 U.S. 242, 250-51 (1986) (internal citations omitted). In deciding a motion for judgment as a matter of law, a court should neither weigh the evidence and evaluate the credibility of the witnesses, nor substitute its judgment for that of the jury. Rather, it must view the evidence in the light most favorable to the party against whom the motion is made, and give that party the benefit of all reasonable inferences. *Wayne v. City of Siebring*, 36 F.3d 517, 525 (6th Cir. 1994) (citing *Agristor Leasing v. A.O. Smith Harvestore Prods.*, 869 F.2d 264, 268 (6th Cir. 1989)). "Only when it is clear that reasonable people could come to but one conclusion from the evidence should a court grant a motion for directed verdict." *Lewis v. City of Irvine*, 899 F.2d 451, 454-55 (6th Cir. 1990).

**III. Discussion**

**A. Defendants' Use of the Train Horn**

Plaintiffs claim Defendants were negligent by failing to sound the train horn in accordance with federal regulations, and that this negligence proximately caused the accident. Under 49 C.F.R. § 222.21, Defendants were required to sound the horn with a pattern of two long blasts, one short blast, and one long blast. *Id*. at § 222.21(a). Further, Defendants were required to initiate the horn pattern fifteen to twenty seconds before the train entered the crossing, and were required to either repeat or prolong the pattern, once initiated, until the train occupied the crossing. *Id*. at § 222.21(a), (b)(2). The regulation does not define "long blast" or "short blast," nor does it impose specific time requirements for long and short blasts.

The train was equipped with an event recorder, which details the timing and duration of the horn blasts at issue. The event recorder indicates that the first horn blast was initiated approximately

3

17.7 seconds before the crossing, and indicates that it lasted for a total of one second. Seven seconds of silence followed. The second horn blast lasted for two seconds, and was followed by 1.7 seconds of silence. The third blast lasted for a total of .9 seconds. The final blast lasted 4.6 seconds, 3.4 of which occurred before the collision.

Thus, the event recorder shows that the first horn blast occurred fifteen to twenty seconds before the train reached the crossing, and that the final blast continued until the crossing was occupied. Plaintiffs maintain, however, that the horn pattern did not satisfy 49 C.F.R. § 222.21. Plaintiffs' expert, Jimmie Scott, testified on direct examination that the first blast and the third blast were essentially the same duration, a violation of Section 222.21's long, long, short, long requirement. On cross-examination, however, Mr. Scott admitted that the total duration of the first blast was one second, the total duration of the third blast was .9 seconds, and that each blast that was required to be "long" was in fact longer than the blast that was required to be "short." Thus, the evidence demonstrates that the horn pattern was initiated fifteen to twenty seconds prior to reaching the crossing, that each of the three "long" blasts were longer than the "short" blast, and that the final blast continued until the train occupied the crossing. As such, the horn pattern complied with 49 C.F.R. § 222.21 in its strictest sense, and Plaintiffs are not able to prove that Defendants were negligent.

Even if Plaintiffs could demonstrate that Defendants did not comply with 49 C.F.R. § 222.21, Plaintiffs cannot prove causation. Plaintiff Charles Byrne has no recollection of the accident, or of the moments preceding the accident. Charles Byrne did testify, however, that he is familiar with and regularly traverses the Ulsh Road crossing, that he grew up around trains, and that it is his habit to immediately slow down and look for trains when he hears a horn blast. The

suggested inference is that Defendants' horn pattern caused the accident because Charles Byrne did not stop and look for a train, as was his habit when he heard train horns. This testimony is not sufficient to prove causation.

> "[T]he mere existence of a scintilla of evidence" does not merit the submission of a case to a jury. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 252 (1986). When a Court considers whether to grant a directed verdict or allow the jury to consider the evidence, "the essential requirement is that mere speculation be not allowed to do duty for probative facts, after making due allowance for all reasonably possible inferences favoring the party whose case is attacked." *Galloway v. United States*, 319 U.S. 372, 395 (1943). Where the evidence is such that the jury is merely "given a choice between two reasonable inferences," a directed verdict against the party with the burden of proof is proper." *Burens v. Indus. Comm'n of Ohio*, 124 N.E.2d 724, 729 (Ohio 1955).

*Everett v. Verizon Wireless, Inc.*, 361 F. Supp. 2d 698, 702 (N.D. Ohio 2005). Here, Plaintiffs have offered a speculative inference of causation, supported by nothing more than a scintilla of evidence regarding Charles Byrne's purported habit at rail crossings. Absent further probative evidence, such an inference is not sufficient to satisfy Plaintiffs' burden to of proving causation.

**B. Charles Byrne's Comparative Negligence**

Even if Plaintiffs could establish a claim for negligence, their claim is barred by Charles Byrne's comparative negligence. Under Ohio's comparative negligence statute, OHIO REV. CODE ANN. § 2307.22 *et seq.*, a defendant is not liable if a plaintiff's negligence is fifty percent or more responsible for the plaintiff's damages. *Delta Fuels, Inc. v. Consol. Envtl. Servs.*, 2012 Ohio App. LEXIS 1953, at \*\*9-\*\*10 (Ohio Ct. App. May 18, 2012).

In the instant matter, Plaintiff Charles Byrne was required to exercise certain duties of care when traversing the Ulsh Road crossing. Ohio common law requires that "[t]he driver of a motor vehicle about to pass over a railroad grade crossing on a public highway is required both to look and listen for approaching trains, and the looking and listening must be at such a time and place and in

such a manner as to be effective for that purpose." *Zuments v. Baltimore & Ohio Ry. Co.*, 271 N.E.2d 813, 814 (Ohio 1971). Moreover, The Ohio Revised Code requires that the driver of a motor vehicle "shall stop within fifty feet, but not less than fifteen feet from the nearest rail crossing of the railroad if any of the following circumstances exist at the crossing: . . . . An approaching train is emitting an audible signal or is plainly visible and is in hazardous proximity to the crossing." OHIO REV. CODE ANN. § 4511.62(A)(1), (A)(1)(e). "A violation of the duty imposed on motorists under R.C. 4511.62 to stop, look and listen constitutes negligence *per se*." *Newton v. Consolidated Rail Corp.*, 1992 WL 188518, at *4 (Ohio Ct. App. Aug. 5, 1992).

Plaintiffs concede that Charles Byrne was negligent under the above-cited common law and statutory duties, but maintain that their claim is not barred by Ohio's comparative negligence statute. Thus, the question on Defendants' motion for judgment as a matter of law is whether a reasonable juror could find that Charles Byrne's negligence was less than fifty percent responsible for the accident, in which case judgment as a matter of law is not appropriate. *See Barger v. Chesapeake & Ohio R.R. Co.*, 590 N.E.2d 1369, 1373 (Ohio Ct. App. 1990) ("[T]he case should ordinarily be submitted to the jury unless a reasonable person could only conclude that the plaintiff was more than fifty percent responsible.").

Here, the Court finds that no reasonable juror could conclude that Charles Byrne's negligence was less than fifty percent responsible for the accident. To the contrary, any reasonable juror would likely find that Charles Byrne's culpability far exceeded that mark. First, it is undisputed that the train was emitting an audible signal, yet Charles Byrne did not stop as required by Section 4511.62. Moreover, photographs taken from Ulsh road demonstrate that a driver has an unobstructed view down the tracks upon immediate approach to the crossing, making a train that is

6

in hazardous proximity "plainly visible" to one who stops fifteen to fifty feet away as required. OHIO REV. CODE ANN. § 4511.62(A)(1)(e).

Second, as described above, Plaintiffs have offered no evidence that Charles Byrne looked and listened as he approached the crossing, let alone that he did so "at such a time and place and in such a manner as to be effective . . . ." *Zuments*, 271 N.E.2d at 814. The only direct evidence touching on this issue comes from the testimony of Cody Byrne, who stated that he does not know whether Charles Byrne looked for a train or not. The only other evidence on the issue comes from Charles Byrne, who testified that it his habit to look and listen at railroad crossings. Despite evidence of habit, it is undisputed that in the instant matter the train horn was blowing, and there are photographs from the crossing demonstrating that there was "a time and place" where one had a clear view down the tracks. As such, the Court cannot say that a reasonable juror could find Charles Byrne's admitted negligence to be anything other than fifty percent or more responsible for the accident.

**IV. Conclusion**

For the reasons stated herein, Defendants' motion for judgment as a matter of law is granted. Case closed.

IT IS SO ORDERED.

                                                s/ *David A. Katz*
                                                DAVID A. KATZ
                                                U. S. DISTRICT JUDGE